SKORNIA, Plaintiff and Respondent, v. HIGHWAY PAVERS, INC., Defendant and Appellant: AXT, Defendant and Respondent.*

*No. 302. Argued May 8, 1968.—Decided June 4, 1968.*
(Also reported in 159 N. W. 2d 76.)

* Motion for rehearing denied, with costs, on September 6, 1968.

For the appellant there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane* of Milwaukee, and oral argument by *F. H. Prosser.*

For the respondent Paul R. Skornia there was a brief and oral argument by *Sidney Spector* of Milwaukee.

For the respondent Allan Axt there was a brief by *Niebler & Herro,* attorneys, and *Chester J. Niebler* of counsel, all of Milwaukee, and oral argument by *Chester J. Niebler.*

HEFFERNAN, J.   This case [1] is governed by the familiar rule that the findings of a trial court will not be set aside unless they are contrary to the great weight and clear preponderance of the evidence. Two findings are of significance here: (1) That Axt neither expressly nor impliedly consented to work for a special employer—that all he did was to perform the work of Highway Pavers as it was assigned to him by Prekop; and (2) that the control over Axt exercised by Skornia was so minimal

---

[1] This case has been before the court on a prior appeal. *Skornia v. Highway Pavers, Inc.* (1967), 34 Wis. 2d. 160, 148 N. W. 2d 678. The judgment was reversed on an evidentiary question, and the court did not consider the merits of the appeal.

that it cannot be implied from that control that an employer-employee relationship arose.

We conclude that the trial court properly applied the rule that one cannot be considered a loaned employee, thus making the special employer liable, unless there is evidence, express or implied, that the employee consented to the changed relationship.

That proposition is set forth in *Edwards v. Cutler-Hammer, Inc.* (1956), 272 Wis. 54, 56, 57, 74 N. W. 2d 606:

"The law is clear that if the one to whom an employee is lent is the master of the servant at the very time the negligent act occurs, it is upon him, as a special employer, that the liability rests. If the one lending the employee is his master at the very time of the injury, then he, as general employer, contracts the liability.

"In the first place, in order that the general employer be relieved from liability and the special employer become liable, there must be a consensual relationship between the employee and the borrowing or special employer. Since the employee-employer relationship is based on contract, it is essential that the employee understand the existence of and agree to the temporary new relationship. If such a consensual relationship, either express or implied, does not exist, then the law is clearly settled that the one to whom the employee is lent is not his master and cannot be held liable for the servant's negligent act. It, therefore, follows that the general employer remains the master of the servant, and the liability is his."

In *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.* (1960), 10 Wis. 2d 405, 409, 410, 102 N. W. 2d 754, we said:

". . . the most-important [test] is the first, viz., did the employee actually or impliedly consent to work for the special employer. *Hanz v. Industrial Comm.* (1959), 7 Wis. (2d) 314, 96 N. W. (2d) 533. Mortimer Levitan, in his article entitled, 'Loaned Employees,' 27 Wisconsin Bar Bulletin, October, 1954, pages 7, 8, succinctly states:

"'An employee simply cannot be transferred to a special employer without his consent.'

"1 Larson, Law of Workmen's Compensation, p. 710, sec. 48.10, points out the necessity of there being a contract of employment between the loaned employee and the special employer before such employee can be determined to have been employed by the special employer. We quote from such section of this text as follows (p. 711):

" 'In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of hire with the special employer? If this question cannot be answered "Yes," the investigation is closed, and there is no need to go on into tests of relative control and the like.' "

It is argued by appellant that these rules are applicable only to workmen's compensation cases and not to questions of liability to third persons. Most cases of "loaned servants" have arisen out of an injury to the employee whose status is in question, and hence they usually involve the law of workmen's compensation. However, we see no reason why a different rule of agency should be applied when the injury is to a third person, for the same legal question arises—*i.e.*, who is the responsible master or who is liable under the doctrine of *respondeat superior*. The Restatement, *Agency,* makes no distinction, in respect to this problem, between compensation cases and liability cases; and a perusal of the Restatement text indicates that the same legal criteria are to be applied in either case. The Restatement, 1 *Agency* 2d, sec. 227, p. 500, recognizes the rule that a servant may be loaned, thus placing the burden of *respondeat superior* on the new master. In comment *a,* p. 501, to the general rule it is pointed out that:

". . . he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first."

Comment *b* provides:

"*b. Inference that original service continues.* In the absence of evidence to the contrary, there is an inference

that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

Comment *c* provides in part:

"*c. Factors to be considered.* . . . Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer. . . ."

Thus, we look initially to the facts to determine what evidence there is to show an attornment to a new employer—even for a limited time and purpose.

It was the conclusion of the trial judge that:

"The record is devoid of any credible evidence that would suggest in the slightest degree that defendant Axt had either expressly or impliedly consented to act as a loaned employee . . . ."

Unless this finding is contrary to the great weight and clear preponderance of the evidence it must stand, and under the rule appearing in *Springfield Lumber, Feed & Fuel Co., supra,* page 410, our inquiry is closed.

As stated above, the presumption is that the original employment relationship remains. The facts clearly do not contravene the presumption. Axt and the crane as a unit were leased by Koch. The alleged new employer did not know and did not care who the particular crane operator was, and Axt had no conversations with Bernstein, Koch's supervisor, or with Skornia, who appellant

contends was Axt's supervisor for the demolition process. Axt testified that nothing occurred to make him conclude he was no longer directly working for Highway Pavers. He went on the new job at the order of Prekop, Highway Pavers' superintendent. Axt testified that if he did not do the work ordered by Prekop he would be fired by Highway Pavers. While appellant would conclude that this is indicative of a new consensual relationship, it would be more reasonable to conclude that the work of destroying the tower was at the command of Highway Pavers and was, as far as Axt was concerned, the work Highway Pavers wanted him to do. It is also significant that Highway Pavers' supervisor, Prekop, was at the scene of the demolition, while Bernstein, Koch's supervisor, was not. When Skornia was injured, it was Prekop's signal to stop that Axt obeyed.

We need not in this opinion go into the details of control and who had the right to exercise it, since it is clear that the appellant did not produce sufficient facts to rebut the presumption of uninterrupted employment with the general employer. The trial judge's finding clearly is not contrary to the great weight and clear preponderance of the evidence.

While we do not consider it necessary, in view of the failure of the appellant to surmount this threshold question, to extensively discuss the right of control, suffice it to say that the facts in regard thereto have been closely scrutinized. We agree with the trial judge that the control exercised or sought to be exercised was "minimal." Axt was undisputedly ready and able to perform the job without instructions. He testified that he had seen the grillwork installed in the tower (to catch falling debris and to mark the point below which the tower was not to be demolished) and knew what was required. The role of Skornia was merely to point out the work to be done. This is not the exercise of control.

The "right-to-control" doctrine is discussed generally in *Edwards v. Cutler-Hammer, Inc.* (1956), 272 Wis. 54, 57, 58, 74 N. W. 2d 606. Therein we said:

"Much of the case law on the subject of a 'borrowed employee' has developed from those cases involving the hiring or lending of a team and carriage with driver, automobile and chauffeur, truck and driver, and heavy equipment, such as a crane, and operator. The holdings in those cases that the general employer was the master of the employee at the time of injury were based upon the fact that the general employer had the right of control over the employee because the general employer and owner of the equipment had the sole right to hire the employee and to select the employee who was to operate that equipment, and that he, the general employer, was the only person who had the right to discharge the operator. The operator's duty to take care of the equipment and to operate it in a safe manner was a duty he owed to his general employer. It is reasoned that the owner and general employer had the responsibility of furnishing to the hirer a safe piece of equipment, and, the instrumentality and operator being considered as an entity, where the negligent act was the failure of the operator in respect to control, management, or lookout in the operation of the instrumentality, the employee was at the very time of the negligent act in the employ of and under the control of his general employer as to that act."

Appellant cites the Minnesota case of *Nepstad v. Lambert* (1951), 235 Minn. 1, 50 N. W. 2d 614, as determinative of Wisconsin law. We do not consider the case analogous. In *Nepstad,* the operator of the hired crane had no knowledge of the work to be done—which, in fact, required the precision placing of steel beams and trusses in accordance with blueprints. It was obviously necessary and understood that complete control of the work was to be surrendered to the hirer of the crane and its operator. In the instant case, such detailed control was not contemplated, necessary, or, in fact, exercised. *Nepstad* is not in point.

The trial judge ably analyzed the facts and, in an excellent opinion, properly applied the Wisconsin law. His findings are clearly correct, and his conclusions of law are in accord with the previous mandates of this court.

*By the Court.*—Judgment affirmed.