HUCKSTORF, Appellant, v. VINCE L. SCHNEIDER ENTER-
PRISES, Respondent.*

*No. 15. Argued November 25, 1968.—Decided December 20, 1968.*
(Also reported in 163 N. W. 2d 190.)

* Motion for rehearing denied, with costs, on March 4, 1969.

For the appellant there was a brief by *Habush, Gillick, Habush & Davis,* and oral argument by *James J. Murphy,* all of Milwaukee.

For the respondent there was a brief by *Prosser, Zimmermann, Wiedabach, Koppa & Lane,* attorneys, and *Jack R. Wiedabach* of counsel, all of Milwaukee, and oral argument by *Jack R. Wiedabach.*

BEILFUSS, J.   The issues are: (1) Can the issue of a loaned employee be resolved by motion for summary judgment; and (2) was the crane operator a loaned or special employee of the general contractor.

The rule so often repeated it needs no citation is that if it appears there are any disputed facts material to the controlling legal issue or any permissible conflicting inferences from the undisputed facts material to the issue the matter should not be determined by summary judgment.   In this case, if it is determined that Zaretzke was the loaned or special employee of Woerfel and conversely not the employee of Schneider at the time and place of the accident, then there was no liability on the part of Schneider for the injuries and damages of the plaintiff and the complaint should be dismissed.

From the affidavits in support of and in opposition to the motion for summary judgment and the pleadings, we are of the opinion that facts and permissible inferences material and necessary for resolution of the loaned employee issue are undisputed.   This issue, therefore, can be resolved by motion for summary judgment as a matter of law.

This court,[1] as well as others, has found the question of the "loaned employee" troublesome.   The definition and factual essentials necessary to establish the legal relationship of the loaned employee are not uniform in all the reported cases, nor is the same emphasis always to the necessary elements.

---

[1] *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.* (1960), 10 Wis. 2d 405, 102 N. W. 2d 754.

However, in *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm., supra,* page 409, this court set forth the standards we deem to be appropriate:

"The essential tests to be applied in determining whether a loaned employee retains his employment with his original employer, or becomes the employee of the special employer, are set forth in *Seaman Body Corp. v. Industrial Comm.* (1931), 204 Wis. 157, 163, 235 N. W. 433, as follows:

" 'The vital questions in controversies of this kind are:

" '(1) Did the employee actually or impliedly consent to work for a special employer?

" '(2) Whose was the work he was performing at the time of injury?

" '(3) Whose was the right to control the details of the work being performed?

" '(4) For whose benefit primarily was the work being done?' "

We start with the legal inference (perhaps more correctly labeled a presumption under our conception of presumptions and inferences) that the employee remains in the employ of the general employer.

In *Braun v. Jewett* (1957), 1 Wis. 2d 531, 85 N. W. 2d 364, and again in *Skornia v. Highway Pavers, Inc.* (1968), 39 Wis. 2d 293, 159 N. W. 2d 76, we adopted the rule as it appears in Restatement, 1 *Agency* 2d, p. 501, sec. 227:

Comment *b* provides: *"Inference that original service continues.* In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."

Comment *c* provides in part: *"Factors to be considered.* . . . Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the

time of the new employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer . . . ."

Although certainly not conceding that element of consent of the employee does not appear in the facts of this case, counsel for Schneider devoted a substantial part of his brief and his argument to the proposition that the element of consent of the employee to serve the special master or employer should not apply in a third-party action in a determination of responsibility for acts of a loaned employee under *respondeat superior*.

He distinguishes third-party actions under the doctrine of *respondeat superior* from employee-employer relationships under the statutory liability imposed in workmen's compensation claims. In support of this position he cites several cases.[2]

In the very recent case of *Skornia v. Highway Pavers, supra,* decided in June, 1968, a like argument was made and rejected. In *Skornia* we stated:

"It is argued by appellant that these rules are applicable only to workmen's compensation cases and not to questions of liability to third persons. Most cases of 'loaned servants' have arisen out of an injury to the employee whose status is in question, and hence they usually involve the law of workmen's compensation. However, we see no reason why a different rule of agency should be applied when the injury is to a third person,

[2] *Carothers v. Bauer* (1964), 23 Wis. 2d 15, 126 N. W. 2d 758; *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm., supra; Hoefer v. Last* (1936), 221 Wis. 102, 266 N. W. 196; *Swedowski v. Westgor* (1961), 14 Wis. 2d 47, 109 N. W. 2d 549; *Harris v. Richland Motors* (1959), 7 Wis. 2d 472, 96 N. W. 2d 840.

for the same legal question arises—*i.e.*, who is the responsible master or who is liable under the doctrine of *respondeat superior*. . . . In comment *a*, p. 501, to the general rule it is pointed out that:

" '. . . he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the first.' " (p. 299.)

We find no compelling reason to retreat from the position so recently taken.

We, however, agree with the respondent Schneider that under the undisputed facts there was implied consent on the part of Zaretzke to serve the Woerfel Company as a loaned employee at the time and place in question and that implied consent fulfills the consent requirement.[3]

A substantial portion of pretrial depositions of Zaretzke are made a part of the affidavits in support and in opposition to the motion for summary judgment.

In these depositions Zaretzke testified, in part, substantially as follows: That he worked for Schneider for about a year and a half on various jobs; that he drew his checks from Schneider most of the time but was sometimes on other payrolls; that he worked at the Vocational School site continuously from May through July except for a two-week period of military service; that he made no decisions as to what was to be moved, where it was to be moved to, or when it was to be moved; that he received all of his directions from Woerfel's superintendent or other Woerfel employees as to what to move and where to move it; that the 40-foot jib was attached to the boom at Woerfel's direction; that Woerfel's employees gave him the standard signals used in the trade for crane operation; that he made about 200 lifts or moves per day, all at the direction of Woerfel; that he never refused to make a lift; that he made out the

---

[3] *Cayll v. Waukesha Gas & Electric Co.* (1920), 172 Wis. 554, 179 N. W. 771.

time sheets for himself and the crane and turned them over to Woerfel's superintendent; and that Schneider came to the job not more than once a week and gave no directions or instructions as to what was to be moved nor as to the methods of moving materials or using the crane.

From Zaretzke's testimony we conclude that all of the orders to move materials were given by Woerfel and none from Schneider and that without exception he complied with the work requests of Woerfel. This performance and acquiescence on the part of Zaretzke is enough to imply his consent to work for Woerfel.

The second element of the test is, "Whose was the work he was performing at the time of the injury?" It was clearly Woerfel's work. Woerfel was the general contractor charged with the responsibility of building the addition. Moving a bundle of plywood from one location to another on the jobsite was certainly a necessary step in the construction process and the responsibility of Woerfel.

The third element is, "Whose was the right to control the details of the work being performed?" Woerfel's employees directed him to move whatever materials they designated, when they wanted them moved and where they wanted them moved. He acquiesced in all of their orders and directions; he and the crane were employed for that purpose. Schneider did not give Zaretzke any directions or orders as to any of the details of the work to be performed either at the time of the incident in question or at any other time. Woerfel hired the crane and operator to facilitate its work in the construction of the building. Woerfel had the right to control the details of the work and did so. The right to control the details of the work to be performed was with the general contractor and special employer Woerfel.

The final element is, "For whose benefit was the work being done?" This test is somewhat analogous to the second test "whose work" was being done. All of the

work done by Zaretzke except the maintenance of the crane was for the benefit of Woerfel. It was certainly to the benefit of Woerfel to have the plywood moved to facilitate its obligation to construct the building. Schneider and Zaretzke were hired on an hourly basis and there was no particular benefit to either Schneider or Zaretzke to move the plywood bundle or anything else for that matter. It was definitely to the benefit of Woerfel to utilize the crane in the movement of heavy materials as much as it could to improve the efficiency and work time in the construction process. Again, that is what the crane was hired for. Moving the plywood was for the benefit of the special employer, Woerfel.

Although the element of consent does not appear as such in the opinion of the Minnesota court in *Nepstad v. Lambert* (1951), 235 Minn. 1, 50 N. W. 2d 614, the case is enthusiastically cited as strong authority for the proposition that Zaretzke was at the time in question a loaned employee and Woerfel his special employer. The facts of the *Nepstad Case* are strikingly similar and the construction and the accident occurred in Wisconsin. The Minnesota court applied the Wisconsin law as it determined it to be and held as we do herein that the crane operator was a loaned employee of the general contractor and that the general contractor was a special employer. The "whose business" and "right to control" tests were used in *Nepstad* and in that respect we consider it substantial authority in support of our opinion herein.

We, therefore, conclude as a matter of law that at the time and place in question, and while engaged in the work which caused the accident, the crane operator Zaretzke was a loaned employee of the general contractor, Woerfel, and not the employee of Schneider. The plaintiff has no claim against Schneider under these circumstances, and the complaint should be dismissed.

*By the Court.*—Judgment affirmed.