FREEMAN, Appellant, v. KRAUSE MILLING COMPANY, Respondent.

*No. 325. Argued June 4, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 599.)

For the appellant there was a brief by *Warshafsky, Rotter & Tarnoff,* attorneys, and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Merten N. Rotter.*

For the respondent there was a brief by *Straub & Lemke,* attorneys, and *John A. Hamell, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Hamell.*

BEILFUSS, J. The sole issue to be determined is whether the plaintiff, Freeman, the injured workman, was a

loaned or a special employee of the defendant, Krause Milling, at the time of the injury.

The court has consistently applied the same test, in the past several years, to determine whether an individual workman was a loaned or special employee. This test was recently reiterated in *Huckstorf v. Vince L. Schneider Enterprises* (1968), 41 Wis. 2d 45, 50, 163 N. W. 2d 190: [1]

> " 'The essential tests to be applied in determining whether a loaned employee retains his employment with his original employer, or becomes the employee of the special employer, are set forth in *Seaman Body Corp. v. Industrial Comm.* (1931), 204 Wis. 157, 163, 235 N. W. 433, as follows:
>
> " ' "The vital questions in controversies of this kind are:
>
> " ' "(1) Did the employee actually or impliedly consent to work for a special employer?
>
> " ' "(2) Whose was the work he was performing at the time of injury?
>
> " ' "(3) Whose was the right to control the details of the work being performed?
>
> " ' "(4) For whose benefit primarily was the work being done?" '
>
> "We start with the legal inference (perhaps more correctly labeled a presumption under our conception of presumptions and inferences) that the employee remains in the employ of the general employer."

While the tests or rule are readily comprehensible, when applied to specific factual situations, the distinctions are sometimes slight and the decisions well-nigh irreconcilable.[2]

---

[1] *Also see Skornia v. Highway Pavers, Inc.* (1968), 39 Wis. 2d 293, 159 N. W. 2d 76.

[2] Such has been the state of law for many years, *see Rhinelander Paper Co. v. Industrial Comm.* (1931), 206 Wis. 215, 239 N. W. 412. The court has given some thought to a revision of the rule but has determined to hold to its precedents until persuaded a change is justified.

The material facts necessary to a resolution of the controversy are undisputed and are as follows:

Commercial Maintenance was in the business of furnishing janitorial service. The work was usually done during its customers' nonworking hours. Many of its employees had other full-time jobs.

In December of 1964, Krause Milling was in a strike situation. Krause Milling at that time contracted with Commercial Maintenance to do its janitorial and clean-up service. The strike was over in about two months but Commercial Maintenance continued to perform janitorial service.

About August of 1965, Krause Milling asked Commercial Maintenance if it could furnish temporary workmen as they were needed, perhaps eight men for a day or one or two men for several days, depending upon Krause Milling's needs. Commercial Maintenance agreed to furnish the men at the rate of $2.50 per hour. Krause was to keep the time records of the employees. Commercial Maintenance was to pay the employees, pay the withholding and social security taxes, and to obtain workmen's compensation insurance and pay the unemployment compensation assessments.

The plaintiff Freeman had attempted to obtain employment on several occasions at Krause Milling but was not hired.

In early August he again sought employment at Krause Milling, was turned down and was leaving the plant when he came upon Mr. Donald Lewis, who asked him if he wanted to work for Commercial Maintenance at Krause Milling. Mr. Lewis was the president and principal managing officer of Commercial Maintenance. Freeman agreed to work for Commercial Maintenance at Krause Milling for $2 per hour. Freeman was taken to a foreman and started to work that day under the direction of Krause Milling's foreman.

Except for one short interval, Freeman worked continuously at Krause Milling from early August, 1965, until the date of the accident, December 11, 1965.

Almost every morning at six or seven o'clock, Lewis was at the Krause Milling plant and directed his men to report to a specified foreman or department of the plant. He would not further direct or instruct them as to the nature or the details of their duties. These instructions were all given by Krause foremen. Lewis testified (at an adverse examination) that he had no control over the men once they were at work at the plant; that he could not fire a man while at work but the Krause foremen could; that some of the men made some complaints to him about working conditions; and that he would urge the men to become permanent employees for Krause Milling if they could.

Freeman worked most of the time in the corn milling department; he never worked in janitorial service. A few days before the accident (December 11, 1965), Freeman made an application for permanent employment. He took a physical examination and was to go to work as a permanent employee for Krause Milling on Monday, December 13, 1965. On December 11, 1965, he was being trained or instructed in the manner of moving, switching and parking boxcars to be used in plant operations. During this instruction he slipped, fell in a hole and injured his leg.

Workmen's compensation benefits were paid by the insurer of Commercial Maintenance. Krause Milling did not report the accident nor participate in processing the claim. After this third-party action for negligence was started against Krause Milling it denied liability upon the ground that at the time of the accident Freeman was its employee and limited to his benefits under the Workmen's Compensation Act.

Under the tests set forth above, we conclude Krause Milling was the special employer of Freeman at the time

of the accident and that its liability is limited to workmen's compensation.

At the time of the injury it is clear that Freeman, by implication at least, consented to work for Krause Milling. Other than being directed to a particular foreman or department, he was given all of his instructions and work detail by the foreman. He complied with these instructions. Commercial Maintenance did not tell or know what was to be done, nor how to do it, and gave no instructions.

At the time of the injury Freeman was moving boxcars. This was a part of the work Krause Milling had to do in its overall operations.

Krause Milling did and could completely control the details of the work being performed when Freeman was injured.

The work at the time of the injury was being done for the benefit of Krause Milling. It was moving cars to facilitate its operations and was training Freeman for its own purposes and benefit. Certainly the work being performed at the time of the injury was not for the benefit of Commercial Maintenance.

The answers to the test questions are all favorable to Krause Milling and its contention that it was Freeman's special employer at the time of the injury must prevail.

Freeman cites several cases, including those of other jurisdictions, as authority for his contention that he was the employee of Commercial Maintenance and not a loaned employee.[3] We shall not attempt to reconcile nor distinguish these cases. We adhere, at this time, to the rules reiterated in *Huckstorf v. Vince L. Schneider Enterprises, supra.*

*By the Court.*—Judgment affirmed.

---

[3] *Rhinelander Paper Co. v. Industrial Comm.* (1931), 206 Wis. 215, 239 N. W. 412; *Visiting Nurse Asso. v. Industrial Comm.* (1928), 195 Wis. 159, 217 N. W. 646; *Blessing v. T. Shriver & Co.* (1967), 94 N. J. Super. 426, 228 Atl. 2d 711; *Kirby v. Union Carbide Corp.* (4th Cir. 1967), 373 Fed. 2d 590.