Kenneth W. DePRATT and Barbara DePratt, his wife, Plaintiffs-Appellants-Petitioners,

v.

John A. SERGIO, d/b/a John A. Sergio Crane Service and United States Fidelity & Guaranty Company, a foreign corporation, Defendants-Respondents,

SELZER-ORNST COMPANY, a Wisconsin corporation, Employers Mutual Liability Insurance Company of Wisconsin, a Wisconsin corporation, Allis-Chalmers, a foreign corporation, The Travelers Insurance Company, a foreign corporation, and West Bend Mutual Insurance Company, a Wisconsin corporation, Defendants.

Supreme Court

*No. 79–1243. Argued April 29, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 62.)

For the petitioners there were briefs by *Howard A. Davis, Habush, Habush & Davis, S.C.,* and *Saichek & Hertel, S.C.,* and oral argument by *Howard A. Davis,* all of Milwaukee.

For the respondents there was a brief by *Bernard J. Hankin* and *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *Bernard J. Hankin.*

SHIRLEY S. ABRAHAMSON, J. The issue presented on review is whether we should discard the borrowed servant rule in favor of the dual liability approach. We decline to discard the borrowed servant rule.

This controversy arose when plaintiff, Kenneth De-Pratt, an employee of Metal Buildings of Wisconsin, Inc., a contracting business, sustained injuries allegedly caused by the negligence of a crane operator who was employed by and operating a crane belonging to Sergio Crane Service. Plaintiff was entitled to worker's compensation benefits from Metal Buildings and sued Sergio Crane in a tort action for damages. Sergio Crane had supplied the crane and the operator to the Metal Buildings construction site at the request of Metal Buildings.

After answering the complaint, Sergio Crane moved for summary judgment arguing that there was no genuine issue as to any material fact,[1] that as a matter of law the crane operator had become the special employee of Metal Buildings for the services which allegedly caused plaintiff's injuries, and that Metal Buildings not Sergio Crane was liable for the tortious conduct of the crane operator. The circuit court applied the borrowed servant rule and granted the motion for summary judgment. Under the borrowed servant rule, the borrowing master, not the loaning master, is liable for the negligent acts of a loaned servant if the loaned servant becomes the servant of the borrowing master. This result is reached even though the loaned servant remains in the employ of the loaning master and is acting within the scope of his employment with the loaning master. Thus when a servant is loaned, either the loan-

---

[1] Sec. 802.08, Stats. 1979–80.

ing master or the borrowing master, not both masters, will be held vicariously liable for the servant's tort.[2]

The circuit court applied the following tests which this court has set forth in numerous cases[3] for determining whether a loaned employee retains his employment with his loaning employer (the general employer) or becomes the employee of the borrowing employer (the special employer):

(1) Did the employee actually or impliedly consent to work for a special employer?

(2) Whose was the work he was performing at the time of injury?

(3) Whose was the right to control the details of the work being performed?

(4) For whose benefit primarily was the work being done?

Applying these tests the circuit court concluded that the crane operator had become the employee of Metal Buildings and that Metal Buildings, not Sergio Crane, bore liability for the crane operator's negligent conduct.

On appeal from an order and a portion of the judgment the court of appeals affirmed the circuit court for Milwaukee county, Donald W. Steinmetz, Circuit Judge.[4]

---

[2] For a discussion of the doctrine of *respondeat superior, see Arsand v. City of Franklin,* 83 Wis.2d 40, 264 N.W.2d 579 (1978).

[3] *Seaman Body Corp. v. Industrial Comm.,* 204 Wis. 157, 163, 235 N.W. 433 (1931); *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.,* 10 Wis.2d 405, 409, 102 N.W.2d 754 (1960); *Skornia v. Highway Pavers, Inc.,* 39 Wis.2d 293, 159 N.W.2d 76 (1968); *Huckstorf v. Vince L. Schneider Enterprises,* 41 Wis.2d 45, 50, 163 N.W.2d 190 (1968); *Freeman v. Kraus Milling Co.,* 43 Wis.2d 392, 394, 168 N.W.2d 599 (1969).

The borrowed servant rule has been applied in cases where the loaned employee is the injured party and where the loaned employee is the tortfeasor. *See Skornia v. Highway Pavers, Inc.,* 39 Wis.2d 293, 159 N.W.2d 76 (1968); *Meka v. Falk Corp.,* 102 Wis.2d 148, 152–53, n. 9, 306 N.W.2d 65 (1981).

[4] *DePratt v. John A. Sergio,* unpublished opinion of the court of appeals filed June 16, 1980.

We granted review to decide an issue not specifically presented to the circuit court or to the court of appeals: Should Wisconsin abandon the bororwed servant rule and adopt the concept of dual liability.[5] Under the dual liability approach, which the plaintiff urges us to adopt, both the borrowing employer and the loaning employer may be held liable in tort to a third party who sustains injuries caused by the negligence of the loaned employee when the loaning employer retains broad control over the loaned employee (such as the right to discharge the employee) and the borrowing employer has control over the details of the loaned employee's work.[6]

---

[5] We did not grant plaintiff's petition to review in order to re-examine the application of the well recognized legal tests relating to loaned employees to the facts of this case. *See In re Standard to Review Petition to Appeal,* 85 Wis.2d xiii (1978). We accept as correct the decision of the court of appeals on the question whether summary judgment was properly granted. Nevertheless, we note, as did the circuit court and the court of appeals that the decision in the case at bar is mandated by *Huckstorf v. Vince L. Schneider Enterprises,* 41 Wis.2d 45, 163 N.W.2d 190 (1968).

[6] For a discussion of the borrowed servant rule and the dual liability approach, *see generally, e.g.,* 1 C Larson, *Workmen's Compensation Law* sec. 48.00–48.50 (1980); Harper & James, *The Law of Torts,* Vol. 2, sec. 26.11, n. 14, p. 1398 (1956), Suppl. to Vol. 2, sec. 26.11, n. 14, p. 164 (1968); Mechem, *Outline of the Law of Agency* secs. 453–468 (4th ed. 1952); 1 Restatement of Agency (Second) sec. 227 (1957); Power, *It's Time to Bury the Borrowed 'Servant Doctrine,* 17 St. Louis U. L. J. 464 (1973); Skogland, *Borrowed Servants,* 76 Comm. L.J. 307 (1971); Smith, *Scope of the Business: The Borrowed Servant Problem,* 38 Mich. L. Rev. 1222 (1940); Note, *Borrowed Servant and the Theory of Enterprise Liability,* 76 Yale L.J. 807 (1967); Note, *Liability for Torts of Borrowed Servant,* 28 Ohio St. L.J. 550 (1967); *Case Note, Master-Servant—Borrowed Servant Doctrine, 5 St. Mary's L.J. 196 (1973); Kastner v. Toombs,* 611 P.2d 62 (Alaska 1980); *Strait v. Hale Constr. Co.,* 26 C.A.3d 941, 103 Cal. Rptr. 487 (1972); *LeJeune v. Allstate Ins. Co.,* 365 So.2d 471 (La. S. Ct. 1978); Annot., *Liability Under Respondeat Superior Doctrine for Acts of Operator Furnished With Leased Machine or Motor Vehicle,* 17 ALR2d 1388 (1951).

The plaintiff attacks the borrowed servant rule on two grounds: first, that the borrowed servant rule is theoretically unsound, *i.e.,* that an underlying premise of the borrowed servant rule is invalid; and second that the borrowed servant rule is difficult to apply.

The plaintiff contends that the borrowed servant rule is premised on the concept that the master who has control over the servant and derives benefit from the servant should be exclusively liable for the negligent acts of the loaned servant. This premise, that one master can thus be selected to be exclusively liable for the torts of the servant, is weak because both the borrowing and loaning masters have some control over the servant; the loaned servant acts within the scope of employment of both masters; and both masters derive some benefit from the servant's work. Calling our attention to this weakness, the plaintiff asserts that justice and common sense indicate that an equitable system for allocating responsibility and liability between the two masters should replace the current rule imposing exclusive liability on one of the masters. Under the entrepreneur or enterprise theory of liability both employers should be responsible to the injured party because both exercise a degree of control, both profit from the employee's conduct, and both are capable of planning for and transferring the losses incurred. Under the dual liability approach the injured party, for whom the doctrine of *respondeat superior* was designed, would enjoy greater assurance of recovery.

The plaintiff further contends that the borrowed servant rule is difficult to apply. The plaintiff argues that when the tests to determine whether a loaned servant becomes the servant of the borrowing master are applied to particular fact situations, the results are not predictable or consistent. We acknowledge that this criticism is well founded. We have said that while the tests or rule to determine whether a loaned employee

retains employment with his original employer or becomes the employee of the borrowing employer "are readily comprehensible, when applied to specific factual situations, the distinctions are sometimes slight and the decisions well-nigh irreconcilable."[7]

We concede that the traditional borrowed servant rule has deficiencies in theory and in application. We conclude, however, that the dual liability approach, although having some merit, does not offer a simple and easily applicable alternative to the borrowed servant rule, and we decline to substitute it for the present rule. If we were to adopt the dual liability approach as explained and urged by the plaintiff, the courts would have to decide when each employer retained sufficient control—or when each employer retained sufficient indicia of the master-servant relation—to subject that employer to liability for the negligent conduct of the loaned employee. Similarly courts would have to decide how responsibility and liability should be allocated to each employer. One way of allocating responsibility and liability between the employers is on the basis of their degree of control over the employee's conduct.[8] This dual liability control test might prove similar to the borrowed servant control test used now to determine which employer is exclusively liable.

We have found no support nor have we been furnished any authority to suggest that the dual liability approach would afford greater certainty or precision in its application than the current approach. It appears that the proffered replacement would create a new area of uncertainty in the law and might force a change in business practices of borrowing and loaning employers, the

---

[7] *Freeman v. Kraus Milling Co., supra,* 43 Wis.2d at 394.

[8] Others have suggested that in all cases the loaning employer be held liable for the torts of the loaned servant. *See* authorities cited in note 6 *supra.*

purchase of additional insurance, and the negotiation of indemnity agreements. Also the dual liability approach might, instead of diminishing unfairness, add unfairness in an already troubled area. For example, if we were to adopt the dual liability approach in the instant case and view both Metal Buildings and Sergio Crane as liable to the injured plaintiff for the tort of the crane operator, Sergio Crane would have to pay the entire judgment. Metal Buildings' liability to the injured plaintiff, an employee of Metal Buildings, is limited to worker's compensation benefits; Sergio Crane could not require contribution from Metal Buildings even if Metal Buildings was substantially more at fault than Sergio Crane. *Mulder v. Acme-Cleveland Corp.*, 95 Wis.2d 173, 177, 290 N.W.2d 276 (1980). *See also* sec. 102.29, Stats. 1977. Until a more satisfactory solution is developed as to the liability of the borrowing and loaning employers for the torts of a loaned employee than the broadly stated dual liability approach urged by the plaintiff, we decline to abandon the borrowed servant rule which, although troublesome, has been followed by this court for many years.

*By the Court.*—Decision of the court of appeals affirmed.

STEINMETZ, J., took no part.