James MEKA, Plaintiff,

v.

THE FALK CORPORATION, Defendant-Respondent-
Petitioner,

J. M. BRENNAN, INC., Defendant,

PHILLIPS PETROLEUM COMPANY, Defendant-Appellant.

Supreme Court

*No. 79-1795. Argued April 29, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 65.)

For the petitioner there were briefs by *Thomas L. Shriner, Jr., David A. Baker* and *Foley & Lardner* of Milwaukee, and oral argument by *Mr. Shriner.*

For the appellant there was a brief by *Mark S. Young* and *Borgelt, Powell, Peterson & Frauen, S.C.,* and oral argument by *Robert C. Burrell,* all of Milwaukee.

SHIRLEY S. ABRAHAMSON, J. The question on review is whether James Meka (plaintiff) became the special employee of The Falk Corporation. If he did, The

Falk Corporation is not liable to the plaintiff for damages or to its co-defendants for contribution for any injuries plaintiff suffered. Ruling on Falk Corporation's motion for summary judgment,[1] the circuit court for Milwaukee county, Laurence C. Gram, Jr., Circuit Judge, dismissed the complaint of James Meka and the cross claims for contribution by Phillips Petroleum Company and J. M. Brennan, Inc.[2] against Falk Corporation. The circuit court, applying the borrowed servant rule,[3] held that Falk Corporation became plaintiff's special employer, that the plaintiff's exclusive remedy against Falk Corporation was an award under the worker's compensation statutes,[4] and that Falk Corporation was not liable

---

[1] Sec. 802.08, Stats. 1979–80.

[2] Phillips Petroleum Co. was the appellant in the court of appeals and the only respondent on this review.

[3] For further discussion of the borrowed servant rule *see De-Pratt v. Sergio,* 102 Wis.2d 141, especially at 144, n. 6, 306 N.W. 2d 62 (1981).

[4] Sec. 102.03(2), Stats. 1975, provides:

"(2) Where such conditions exist the right to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the worker's compensation insurance carrier."

Sec. 102.06, Stats. 1975, provides:

"**Joint liability of employer and contractor; loaned employes.** An employer shall be liable for compensation to an employe of a contractor or subcontractor under the employer who is not subject to this chapter, or who has not complied with the conditions of s. 102.28(2) in any case where such employer would have been liable for compensation if such employe had been working directly for the employer, including also work in the erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer. The contractor or subcontractor (if subject to this chapter) shall also be liable for such compensation, but the employe shall not recover compensation for the same injury from more than one party. In the same manner, under the same conditions, and with like right of recovery, as in the case of an employe of a contractor or subcontractor, described above, an em-

for contribution.[5] In an unpublished decision the court of appeals reversed the order and judgment of the circuit court.[6] We reverse the decision of the court of appeals.

The facts which give rise to the controversy can be stated briefly. The plaintiff was an employee of D. J.

---

ployer shall also be liable for compensation to an employe who has been loaned by the employer to another employer. The employer who becomes liable for and pays such compensation may recover the same from such contractor, subcontractor or other employer for whom the employe was working at the time of the injury if such contractor, subcontractor or other employer was an employer as defined in s. 102.04."

In *Braun v. Jewett*, 1 Wis.2d 531, 535–536, 85 N.W.2d 364 (1957), this court said:

"The problem of the 'loaned employee' arises frequently. A servant of one employer may be loaned to another for some special service so as to become, as to that service, the employee of the latter. When an employee so loaned is injured in the course of that service, he may at his option claim workmen's compensation from either the general employer or the special employer, although of course he cannot recover double compensation; and if the general employer pays him such compensation, the general employer may recover the same from the special employer. Sec. 102.06, Stats. 1949. In the case of the loaned employee, his remedy under the Workmen's Compensation Act is his exclusive remedy against the special employer, and he cannot maintain an action against the special employer for damages resulting from the special employer's negligence or violation of the safe-place statute." (Citations omitted.)

[5] An employer who is immune to suit by an injured employee is similarly immune to claims for contribution or indemnity by a third party who has been sued by the employee. *Mulder v. Acme-Cleveland Corp.*, 95 Wis.2d 173, 177, 290 N.W.2d 276 (1980).

[6] *Meka v. Falk Corporation*, unpublished opinion of the court of appeals filed September 23, 1980.

We granted review in this case because we granted review in *DePratt v. Sergio*, 102 Wis.2d 141, 306 N.W.2d 62 (1981) to reexamine the borrowed servant rule and because the decision of the court of appeals in the instant case appeared to conflict with our decision in *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 168 N.W.2d 599 (1969). *See* criterion (D), *In Re Standards to Review Petitions to Appeal*, 85 Wis.2d xiii (1978).

Nugent Company, a business which provides temporary help to other companies. On October 25, 1975, Nugent assigned plaintiff to work at Falk Corporation. Plaintiff continued to work at Falk Corporation from that time until he was injured on Falk's premises on January 29, 1976, when a propane system exploded. The plaintiff brought suit against Falk Corporation for negligently maintaining the propane system, against Phillips Petroleum Company for negligently designing the system and against J. M. Brennan, Inc., for negligently installing the system. Falk Corporation moved for summary judgment and Falk Corporation and the plaintiff filed affidavits in support of their positions on the motion for summary judgment. Plaintiff claimed that at all times he considered himself an employee of Nugent, not Falk Corporation; Falk Corporation claimed that for purposes of worker's compensation the plaintiff was its special employee who complied with the instructions of Falk Corporation's supervisory personnel. In ruling on the motion the circuit court applied the following tests which this court had set forth to determine whether the plaintiff became the employee of Falk Corporation, the borrowing employer (the special employer):

(1) Did the employee actually or impliedly consent to work for the special employer?

(2) Was the employee performing the special employer's work at the time of the injury?

(3) Did the special employer have the right to control the details of the work being performed?

(4) Was the work of the employee primarily for the benefit of the special employer?[7]

---

[7] *Seaman Body Corp. v. Industrial Comm.*, 204 Wis. 157, 163, 235 N.W. 433 (1931); *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.*, 10 Wis.2d 405, 409, 102 N.W.2d 754 (1960); *Skornia v. Highway Pavers, Inc.*, 39 Wis.2d 293, 159 N.W.2d 76 (1968); *Huckstorf v. Vince L. Schneider Enterprises*, 41 Wis.2d 45, 50, 163 N.W.2d 190 (1968); *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 394, 168 N.W.2d 599 (1969).

The circuit court, relying on *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 168 N.W.2d 599 (1969), concluded on the basis of the facts presented in the affidavits and reasonable inferences drawn therefrom that as a matter of law the plaintiff had become a special employee of Falk Corporation.

The court of appeals examined the record independently to determine whether there was a factual dispute or conflicting inferences which would bar the granting of a summary judgment.[8] The court of appeals, distinguishing *Freeman v. Krause Milling Co.* from this case, concluded that the affidavits reveal a conflict as to whether the plaintiff expressly or impliedly consented to work for Falk Corporation and that plaintiff's consent or lack thereof was a factual issue for the jury.[9] The ques-

---

[8] *Wright v. Hasley*, 86 Wis.2d 572, 578–79, 273 N.W.2d 319 (1979).

[9] The circuit court and the court of appeals agreed that under the other three tests set forth by this court there is no dispute that the record establishes, as a matter of law, that Meka was performing Falk's work at the time of injury; that Falk had the right to control the details of the work; and that the work Meka performed was for Falk's benefit.

For a discussion of consent, *see Edwards v. Cutler-Hammer, Inc.*, 272 Wis. 54, 56–57, 74 N.W.2d 606 (1956); *Hanz v. Industrial Comm'n*, 7 Wis.2d 314, 316–317, 96 N.W.2d 533 (1959); *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.*, 10 Wis.2d 405, 412, 413, 102 N.W.2d 754 (1960); *Ryan, Inc. v. DILHR*, 39 Wis.2d 646, 650, 651, 159 N.W.2d 594 (1968); *Nelson v. L & J Press Corp.*, 65 Wis.2d 770, 778–79, 223 N.W.2d 607 (1974); 1 C Larson, *The Law of Workmen's Compensation*, sec. 48.10 (1980).

Phillips Petroleum urges us to distinguish the tests relating to loaned employees (1) in the context of a case in which the loaned employee is the tortfeasor and the question is whether the general employer or special employer is liable to the injured party under the doctrine of *respondent superior, see DePratt v. Sergio*, 102 Wis.2d 141, 306 N.W.2d 62 (1981), and (2) in the context of a case such as the case at bar in which the loaned employee is the injured party and the question is whether the special employer is exclusively liable under worker's compensation. Phillips Petro-

tion of whether the loaned employee has consented to work for the special employer is of great importance in determining whether the loaned employee became an employee of the special employer. *Ryan, Inc. v. DILHR,* 39 Wis.2d 646, 650, 159 N.W.2d 594 (1968).

Inasmuch as both the circuit court and the court of appeals viewed the *Freeman-Krause Milling case* as of primary importance and controlling authority on the issue of the loaned employee's consent, we set forth the facts of that case. Commercial Maintenance, the general employer of Freeman, agreed to furnish temporary workmen to Krause Milling as they were needed. Krause Milling was to keep the time records of the employees; Commercial Maintenance was to pay the employees, pay the withholding and social security taxes, obtain work-

leum argues that the two types of cases—*respondeat superior* and worker's compensation—should be treated differently because the principal issue in the *respondeat superior* context is the right to control the physical conduct of the loaned employee tort-feasor while the principal issue in the worker's compensation context is consent on the part of the loaned employee to engage in a new employment relation. Consent is not significant in the *respondeat superior* case because the loaned employee loses no rights in the *respondeat superior* case. Consent is significant in the case in which the loaned employee is injured because if a new employment relation is created with the borrowing employer the employee loses the right to sue the borrowing employer at common law in negligence. This court has treated the two types of cases—*respondeat superior* and worker's compensation—in the same way and has applied the same tests of loaned employee to both. *See Edwards v. Cutler Hammer, Inc.,* 272 Wis. 54, 56–57, 74 N.W.2d 606 (1956); *Skornia v. Highway Pavers, Inc.,* 39 Wis.2d 293, 299, 159 N.W.2d 76 (1968). Because this is a worker's compensation case and because, as Phillips Petroleum urges, we specifically deal with the issue of consent, we do not review our earlier cases, particularly *Edwards* and *Skornia* to consider the validity of Phillips Petroleum's position that the same tests should not be applied in *respondeat superior* cases as in worker's compensation cases.

men's compensation insurance, and pay the unemployment compensation assessments. Freeman began work at Krause Milling under this arrangement in August of 1965 and continued in this employment until December 11, 1965, the date of the accident. Each day Freeman reported to the principal managing officer of Commercial Maintenance, who in turn directed Freeman to report to a specified foreman or department of Krause Milling. The details of Freeman's duties were determined by Krause Milling personnel. This court held as a matter of law that Freeman had consented to work for Krause Milling. In reaching this conclusion, the court discussed the issue of consent as follows:

"At the time of the injury it is clear that Freeman, by implication at least, consented to work for Krause Milling. Other than being directed to a particular foreman or department, he was given all of his instructions and work detail by the foreman. He complied with these instructions. Commercial Maintenance did not tell or know what was to be done, nor how to do it, and gave no instructions." *Freeman v. Krause Milling Co., supra* 43 Wis.2d at 397.

The circuit court viewed the facts of the instant case as providing more compelling support than did the *Freeman-Krause Milling case* for finding that the loaned employee had implicitly consented to accept the borrowing employer as his special employer. In particular, the circuit court stressed that in the case at bar the loaning employer did not supervise the loaned employee on the premises of the borrowing employer.

The court of appeals distinguished *Freeman v. Krause Milling Co.*, on the ground that Freeman, unlike the plaintiff in the case at bar, had applied for permanent employment at Krause Milling. Indeed Freeman was injured two days before he was scheduled to go to work at Krause as a permanent employee.

We agree with the circuit court that Freeman's agreement to become a permanent employee of Krause Milling beginning after the date of the accident was not a fact relied upon by this court in making its determination of the nature of Freeman's relation to Krause Milling on the date of the accident. At the same time we agree with Phillips Petroleum's contention in this case that the borrowing employer's control of the loaned employee's work is not conclusive on the issue of the employee's implied consent to become the employee of the borrowing employer.[10] The degree of control by the borrowing employer is, however, an important factor to be considered with other factors in determining whether consent is present.

Plaintiff's affidavit states that plaintiff did not intend to be a Falk Corporation employee. Whether plaintiff consented to have Falk Corporation become his special employer is not dependent on the existence of an express

[10] Phillips Petroleum properly relies on the following statement in *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm.*, 10 Wis.2d 405, 412, 102 N.W.2d 754 (1960):

"However, the mere fact that a loaned employee submits himself to the control and direction of the special employer is not conclusive on the issue of such employee's implied consent to become the employee of the special employer. In a situation, where the original employer commands the loaned employee to perform service for the special employer, such right of control by the special employer standing alone is insufficient to support an inference that the employee impliedly consented to enter the employment of the special employer. *Rhinelander Paper Co. v. Industrial Comm.* (1931), 206 Wis. 215, 218, 239 N.W. 412. In Mr. Chief Justice ROSENBERRY's opinion in that case he declared (p. 217):

" 'Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order.' "

written or oral contract or agreement between the parties or on plaintiff's intentions or on plaintiff's understanding. In the case at bar, the consent of the plaintiff is found in the actual nature of plaintiff's relationship with Falk Corporation.[11] Several factors support the circuit court's holding that as a matter of law plaintiff had impliedly consented to work for Falk Corporation, the special employer. Plaintiff knew when he was hired by Nugent that his work would be performed for customers of Nugent; plaintiff had worked at Falk Corporation for a significant period of time—three months; plaintiff was hired to perform work as an unskilled laborer; plaintiff was subject to a high degree of control and supervision by Falk Corporation as to actual work done; plaintiff worked on Falk Corporation's premises; plaintiff's work was part of Falk Corporation's regular business; Nugent, the loaning employer, had no control or right to control the nature of the work performed by plaintiff for Falk Corporation; Falk Corporation had the right to remove plaintiff from further work at Falk Corporation.[12]

---

[11] *Cf.* sec. 221, Restatement (Second) of Agency (1957).

[12] Sec. 227, Restatement (Second) of Agency (1957), to which this court has referred in prior cases, sets forth the rule that a loaned servant may become the servant of the borrowing master as follows:

"Sec. 227.   **Servant Lent to Another Master**

"A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

"Comment:

"*a. Service in relation to a specific act.* Whether or not the person lent or rented becomes the servant of the one whose immediate purposes he serves depends in general upon the factors stated in Section 220(2). Starting with a relation of servant to one, he can become the servant of another only if there are the same elements in his relation to the other as would constitute him a servant of the other were he not originally the servant of the

We recognize that Nugent paid plaintiff's wages and social security taxes; that Nugent withheld taxes; and that Nugent could terminate plaintiff's employment. The issue, however, is whether Falk Corporation became the special employer, not whether Nugent was the general employer. It is clear that Nugent remained the general employer.

first. Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. . . ."

Sec. 220, Restatement (Second) of Agency (1957), to which the comments to sec. 227 refer, is also helpful. Sec. 220 defines servant and sets forth guidelines to determine whether the employment relation is a master-servant relation and provides as follows:

"Sec. 220.   **Definition of Servant**

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

Phillip Petroleum asserts that it is apparent that Meka did not become an employee of Falk Corporation because Falk Corporation treated workers furnished by Nugent differently than it treated workers hired directly by Falk Corporation. Different treatment of the two classes of workers is not conclusive on the question of whether the loaned Nugent workers became special employees of Falk Corporation. Obviously Falk Corporation was not the general employer of the loaned employees. As the special employer of the loaned employees, Falk Corporation could provide different rules and conditions for loaned employees than were provided for employees hired directly by Falk Corporation.

We conclude, as did the circuit court, that the facts in this case are substantially similar to those in *Freeman-Krause Milling* and that the outcome of this case is mandated by *Freeman-Krause Milling*.[13] Because we conclude that the record does not raise a genuine issue as to any material fact and that as a matter of law the plaintiff, the loaned employee, became a special employee of Falk Corporation at the time of the injury, we reverse the decision of the court of appeals and affirm the judgment of the circuit court for Milwaukee county.

*By the Court.*—Decision of the court of appeals is reversed; judgment of the circuit court is affirmed.

---

[13] The Falk Corporation, citing *Danek v. Meldrum Mfr. & Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977), and cases from other jurisdictions, urges us to hold that as a matter of law in labor-broker cases the loaned employee becomes the employee of the labor broker's customer. We do not adopt such a rule although we recognize that the tests this court has adopted to determine when the borrowing employer becomes a special employer "when applied to specific factual situations" result in distinctions which "are sometimes slight" and in decisions which are "well-nigh irreconcilable." *Freeman v. Krause Milling Co.*, 43 Wis.2d 392, 394, 168 N.W.2d 599 (1969). *See* 1 C. Larsen, *The Law of Workmen's Compensation* sec. 48.23 (1980).