Terrence A. BORNEMAN, as surviving spouse of Jason S. Borneman, deceased, Plaintiff-Appellant,

v.

CORWYN TRANSPORT, LTD. and Great West Casualty Company Defendants-Respondents-Petitioners,

EMPLOYERS INSURANCE OF WAUSAU, a mutual company, Defendant-Respondent.

Supreme Court

*No. 96–2511. Oral argument March 3, 1998.—Decided June 25, 1998.*

(Also reported in 580 N.W.2d 253.)

For the defendants-respondents-petitioners there were briefs by *Jeffrey J. Strande* and *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau and oral argument by *Jeffrey J. Strande.*

For the plaintiff-appellant there was a brief by *Randy L. Frokjer* and *Ament, Wulf & Frokjer, S.C.*, Merrill and oral argument by *Randy L. Frokjer.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Borneman v. Corwyn Transp., Ltd.*, 212 Wis. 2d 25, 567 N.W.2d 887 (Ct. App. 1997). The court of appeals reversed a judgment of the Circuit Court for Marathon County, Raymond F. Thums, Judge. The circuit court granted the motion of Corwyn Transport, Ltd., for summary judgment and dismissed the complaint of Terrence A. Borneman, the plaintiff, for wrongful death as the surviving spouse of Jason S. Borneman. The circuit court concluded that at the time and place of the accident resulting in Jason Borneman's death, Monty Szydel was an employee loaned by Corwyn Transport to Major Industries, Inc., making Szydel a co-employee of Jason Borneman, an employee of Major Industries. Therefore, the circuit court ruled that Wis. Stat. § 102.03 (1993–94), the exclusive remedy provision of the Worker's Compensation Act,[1] precluded the plaintiff from recovering

---

[1] Wisconsin Stat. § 102.03(2) (1993–94) provides in pertinent part that "the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier."

damages from Szydel and Szydel's general employer, Corwyn Transport.

¶ 2. The court of appeals reversed the judgment of the circuit court, concluding as a matter of law that no genuine issue of material fact exists to support Corwyn Transport's loaned employee defense. The court of appeals directed the circuit court to enter summary judgment precluding Corwyn Transport from asserting the loaned employee defense and remanded the cause to the circuit court for trial on the issue of Szydel's negligence.

¶ 3. The only issue before this court is whether Szydel, an employee of Corwyn Transport, became a loaned employee of Major Industries when he assisted employees of Major Industries in loading a flatbed trailer. If Szydel was a loaned employee of Major Industries at the time and place of the accident, then Jason Borneman and Szydel were co-employees of Major Industries and the plaintiff is precluded under Wis. Stat. § 102.03(2) from suing Szydel and Szydel's general employer, Corwyn Transport, for negligence. Alternatively, if Szydel was not a loaned employee of Major Industries at the time and place of the accident, then the plaintiff can pursue a wrongful death action against Corwyn Transport, Szydel's employer.

¶ 4. For the reasons set forth, we hold that Szydel was not a loaned employee of Major Industries at the time and place of the accident. Accordingly, we affirm the decision of the court of appeals.

All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise indicated.

## I

¶ 5. The relevant facts including those that are in dispute are set forth below. The material facts and the reasonable inferences therefrom necessary to a resolution of the loaned employee defense in this case are undisputed.

¶ 6. Corwyn Transport contracted with Major Industries to furnish a trailer truck to haul two loads for Major Industries from Marathon County, Wisconsin, to Georgia. Monty Szydel, a truck driver for Corwyn Transport, dropped off the trailer truck at Major Industries on Friday, September 24, 1994. The trailer was to be loaded by employees of Major Industries, and Szydel was to pick up the loaded trailer truck the following Monday morning.

¶ 7. Because of inclement weather, the trailer was not loaded and ready for pickup on Monday morning. Szydel was told to pick up the trailer mid-morning on Monday. When Szydel arrived at Major Industries sometime between 9:00 a.m. and 10:00 a.m. that morning, Major Industries had not yet loaded the trailer.

¶ 8. After Szydel's arrival, four Major Industries employees began to load the trailer in heavy mist conditions. Major Industries' standard loading procedure required four employees. Although four Major Industries employees were available, Szydel participated in the loading.

¶ 9. It is unclear why Szydel helped load the trailer. Szydel stated that he was unsure whether he was asked to participate in the loading process or simply offered his services. Szydel was not compensated by Major Industries or Corwyn Transport for helping to load the trailer. No arrangement existed between Major Industries and Corwyn Transport for Szydel to help load the trailer. Szydel's only obligation was to

secure the load once it was placed on the trailer and to drive the truck delivering the load to its intended destination.

¶ 10. The parties dispute Szydel's role in the loading process. One employee of Major Industries claimed that Szydel was on top of the load immediately before it fell and that Szydel was in the best position to determine the stability of the load. According to another employee of Major Industries, Szydel had directed the Major Industries' foreman in the loading process, had made suggestions about how to position the aluminum boxes and had helped the foreman position the boxes on the trailer. Both Szydel and the foreman claim that Szydel did not direct the sequence, method, manner or any other detail of the loading process.

¶ 11. The accident occurred around 1:00 p.m., when Jason Borneman was placing the last box or two onto the load. Part of the load weighing more than one ton fell on him, tragically causing his death.

¶ 12. On April 3, 1995, Jason Borneman's surviving spouse, Terrence Borneman, filed a wrongful death action against Corwyn Transport, alleging that Szydel negligently caused the death of Jason Borneman.

¶ 13. The circuit court granted Corwyn Transport's motion for summary judgment, concluding on the basis of the facts and reasonable inferences therefrom that as a matter of law Szydel was a loaned employee of Major Industries at the time and place of the accident.

¶ 14. The court of appeals reversed the judgment of the circuit court and remanded the cause to the circuit court with directions that the circuit court enter summary judgment precluding the loaned employee

defense and set the matter for trial on the issue of Szydel's negligence.

## II

¶ 15. In reviewing a summary judgment, this court applies the same methodology as used by the circuit court, which is set forth in Wis. Stat. § 802.08(2). *See Jeske v. Mount Sinai Med. Ctr.*, 183 Wis. 2d 667, 672, 515 N.W.2d 705 (1994). Under § 802.08(2), summary judgment must be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 16. Although there are numerous facts in dispute in this case, all the material facts necessary to a resolution of the loaned employee defense are undisputed. When the material facts are undisputed, the determination of whether an employee is a loaned employee is a question of law which this court determines independent of the circuit court and the court of appeals, benefiting from their analyses. *See Bauernfeind v. Zell*, 190 Wis. 2d 701, 714, 528 N.W.2d 1 (1995) (citing *Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 753, 463 N.W.2d 682 (1990)).

## III

¶ 17. We begin with a brief summary of Wisconsin law regarding loaned employees. It is well settled that an employee of one employer (sometimes referred to as the general employer) may under certain circum-

stances become the employee of another employer (sometimes referred to as the borrowing employer or special employer).

¶ 18. The rationale of the loaned employee doctrine as it relates to worker's compensation is that an employee who is on loan to a borrowing employer becomes a loaned employee of the borrowing employer and should, for worker's compensation purposes, be treated as an employee of the borrowing employer. The loaned employee doctrine is one way of promoting the compromises and policies underlying the Worker's Compensation Act. *See Bauernfeind,* 190 Wis. 2d at 713–14.

¶ 19. Over the years the court has decided many cases involving the application of the loaned employee doctrine. The test to determine whether an employee remains in the employ of the general employer or becomes the loaned employee of the borrowing employer was first set forth 67 years ago in *Seaman Body Corp. v. Industrial Comm'n,* 204 Wis. 157, 163, 235 N.W. 433 (1931). The *Seaman* loaned employee test has two aspects: three elements and four vital questions as follows:

> The relation of employer and employee exists as between a special employer to whom an employee is loaned whenever the following facts concur: (a) Consent on the part of the employee to work for a special employer; (b) Actual entry by the employee upon the work of and for the special employer pursuant to an express or implied contract so to do; (c) Power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

The vital questions in controversies of this kind are: (1) Did the employee actually or impliedly consent to work for a special employer? (2) Whose was the work he was performing at the time of injury? (3) Whose was the right to control the details of the work being performed? (4) For whose benefit primarily was the work being done?

*Seaman*, 204 Wis. at 163.

¶ 20. Although the two aspects of the *Seaman* test are, as the court of appeals decision recognized, closely related, most of the cases interpreting and applying the *Seaman* test have emphasized the four vital questions rather than the three elements.

¶ 21. The *Seaman* test is often difficult to apply to determine whether Employer A's employee who gives some temporary help to Employer B becomes B's loaned employee. *See Braun v. Jewett*, 1 Wis. 2d 531, 536, 85 N.W.2d 364 (1957). The prior cases are difficult to fit together because the test is so "fact-oriented." *Gansch*, 158 Wis. 2d at 750.

¶ 22. Over the years this court has acknowledged the deficiencies of the *Seaman* test as well as the confusing and sometimes conflicting case law interpreting and applying it.[2] On more than one occasion the court

---

[2] The following decisions have recognized the confusion and conflict in the case law applying the *Seaman* test. *See, e.g., Meka v. Falk Corp.*, 102 Wis. 2d 148, 158 n.13, 306 N.W.2d 65 (1981); *DePratt v. Sergio*, 102 Wis. 2d 141, 145, 306 N.W.2d 62 (1981); *Huckstorf v. Vince L. Schneider Enter.*, 41 Wis. 2d 45, 49, 163 N.W.2d 190 (1968); *Braun v. Jewett*, 1 Wis. 2d 531, 536, 85 N.W.2d 364 (1957); *Rhinelander Paper Co. v. Industrial Comm'n*, 206 Wis. 215, 217, 239 N.W. 412 (1931).

Commentators also note that the law of loaned employees is confusing and conflicting. *See* J. Dennis Hynes, *Chaos and the Law of Borrowed Servant: An Argument for Consistency*, 14 J. L. & Com. 1 (1994); Jack B. Hood, Benjamin A. Hardy, Jr. &

has expressed dissatisfaction with the application of the *Seaman* test, declaring that "this court, as well as others, has found the question of the 'loaned employee' troublesome. The definition and factual essentials necessary to establish the legal relationship of the loaned employee are not uniform in all the reported cases, nor is the same emphasis always to the necessary elements." *Gansch*, 158 Wis. 2d at 751. Although the test is "readily comprehensible, when applied to specific factual situations, the distinctions are sometimes slight and the decisions well-nigh irreconcilable." *Freeman v. Krause Milling Co.*, 43 Wis. 2d 392, 394, 168 N.W.2d 599 (1969).

¶ 23. Despite the difficulties in applying the *Seaman* test, neither courts nor commentators have devised a better one, and this court has declined to revise the *Seaman* test.[3]

¶ 24. In this case Corwyn Transport attacks the court of appeals decision on two grounds: (1) that the court of appeals decision incorrectly applied the *Seaman* test; and (2) that the court of appeals decision significantly modified the *Seaman* test.

¶ 25. First, Corwyn Transport asserts that the court of appeals incorrectly applied the *Seaman* test by emphasizing the three-elements aspect of the test rather than the four vital questions. We disagree with Corwyn Transport's reading of the court of appeals decision. Although many of the loaned employee cases refer only to the four vital questions and do not specifically discuss the three-elements aspect of the *Seaman* test, the cases implicitly recognize that the four vital

Harold S. Lewis, Jr., *Workers' Compensation and Employee Protection Laws in a Nutshell* 45 (2d ed. 1990).

[3] *See DePratt*, 102 Wis. 2d at 146–47; *Freeman v. Krause Milling Co.*, 43 Wis. 2d 392, 394 n.2, 168 N.W.2d 599 (1969).

questions are intended to facilitate analysis of the three-elements aspect of the *Seaman* test.

¶ 26. In this case the court of appeals started with the three-elements aspect of the *Seaman* test and then used the four vital questions to analyze the three elements. The court of appeals suggested courts should "use the three-element test of *Seaman* as it was originally stated, with a focus on whether a special employment contract has been created, considering not only the 'vital questions' of *Seaman* in the inquiry, but all queries and inferences that assist in making that determination." *Borneman*, 212 Wis. 2d at 34. Although the court of appeals' statement of the *Seaman* test does not use the same language used in prior cases, its summary of the *Seaman* test is consistent with the application of the *Seaman* test in prior cases.

¶ 27. The court of appeals in the present case focused on "whether a new employment contract was created" between the employee and the borrowing employer. *Borneman*, 212 Wis. 2d at 33. The court of appeals restates the reasoning of prior cases in which this court has declared that the consent of an employee to enter into a new employment relationship with a borrowing employer is the most critical inquiry in the *Seaman* test.[4]

---

[4] The court has stated the importance of this inquiry as follows:

> In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of hire with the special employer? If this question cannot be answered "yes," the investigation is closed, and there is no need to go on into the tests of relative control and the like.

3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 48.12, at 8–440 (cited by *Ryan, Inc. v. ILHR Dep't*, 39 Wis. 2d 646, 650–51, 159 N.W.2d 594 (1968); *Skornia v. High-*

¶ 28. The court has often stated that an employee cannot become a loaned employee of a borrowing employer without the employee's consent.[5] The court of appeals recognized, as have prior cases, a presumption that an employee remains in the employ of the general employer. *See Ryan, Inc. v. ILHR Dep't*, 39 Wis. 2d 646, 650, 159 N.W.2d 594 (1968); *Skornia v. Highway Pavers, Inc.*, 39 Wis. 2d 293, 299–300, 159 N.W.2d 76 (1968) (quoting with approval Restatement (Second) of Agency § 227 cmt. b (1958)).[6]

■

¶ 29. The essence of the *Seaman* test, therefore, lies in determining whether an employee consented to leave his or her general employment and to enter into a new employer-employee relationship, if only of a temporary nature. *See Escher v. ILHR Dep't*, 39 Wis. 2d 527, 533, 159 N.W.2d 715 (1968). Emphasizing the consent of the employee acknowledges that the employee loses and gains rights when a new employment rela-

---

*way Pavers, Inc.*, 39 Wis. 2d 293, 299, 159 N.W.2d 76 (1968); *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm'n*, 10 Wis. 2d 405, 410, 102 N.W.2d 754 (1960)).

*See also Meka*, 102 Wis. 2d at 152–53; *Nelson v. L. & J. Press Corp.*, 65 Wis. 2d 770, 779 n.7, 223 N.W.2d 607 (1974); *Escher v. ILHR Dep't*, 39 Wis. 2d 527, 533, 159 N.W.2d 715 (1968).

[5] *See Skornia*, 39 Wis. 2d at 298; *Rhinelander*, 206 Wis. at 217.

[6] Restatement (Second) of Agency § 227 cmt. b, at 501 (1958) states:

> b. *Inference that original service continues.* In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.

tionship is forged.[7] The distinction between the mere consent of an employee to perform certain acts for a borrowing employer and the employee's consent to enter into a new employment relationship with the borrowing employer is important.[8]

¶ 30. We conclude that the three elements and the four vital questions of the *Seaman* test are intertwined and closely related, as the court of appeals opinion demonstrates. The court of appeals properly focused its principal inquiry on whether Szydel, an employee of Corwyn Transport, consented to a new employee-employer relationship with Major Industries.

¶ 31. Corwyn Transport's second challenge to the decision of the court of appeals is that the decision significantly modified the *Seaman* test by adding a new requirement of a "formal" contract between the general employer and the borrowing employer. According to Corwyn Transport, the court of appeals has ruled that in the absence of a formal arrangement between the two employers, the employee will always remain the employee of the general employer. Corwyn Transport contends that this modification of the *Seaman* test conflicts with the traditional rationale for the loaned employee doctrine, which is to address employment arrangements established between employers on an ad hoc basis to meet problems that arise during the work day.

¶ 32. We conclude that Corwyn Transport mischaracterizes the court of appeals decision. We do not

[7] *See Meka*, 102 Wis. 2d at 152–53 n.9; 3 Arthur Larson & Lex L. Larson, *Larson's Workers' Compensation Law*, § 48.12, at 8–440 (1991).

[8] *See Escher*, 39 Wis. 2d at 533; Elmer H. Blair, *Workmen's Compensation*, § 5.07, at 5–22 (1974).

read the decision of the court of appeals as establishing a new requirement of a "formal" contract between the general employer and the borrowing employer. The word "formal" is found nowhere in the court of appeals decision. Rather the court of appeals considered the existence of an express or implied agreement, or lack thereof, between Corwyn Transport and Major Industries as a factor bearing on the issue of whether Szydel consented to work for Major Industries. "Knowledge of the two employers [about the working arrangement] certainly has a bearing on the establishment of any new, temporary contractual relationship." *Borneman*, 212 Wis. 2d at 36.

¶ 33. The court of appeals did not rewrite the *Seaman* test but rather properly applied a factor that Wisconsin courts have long considered in determining whether an employee consented to work for a borrowing employer. In previous cases involving loaned employees, some arrangement or understanding existed between the two employers about the work to be performed by the employee for the borrowing employer. In determining the status of an employee, the court has considered the arrangement between the two employers.[9]

---

[9] *See, e.g., Springfield*, 10 Wis. 2d at 412; *Braun*, 1 Wis. 2d at 538; *Rhinelander*, 206 Wis. at 217.

If the employee was instructed by the general employer to perform some work for the borrowing employer and, in so doing, the employee carried out the general employer's orders, no new employment relationship was created. *See Rhinelander*, 206 Wis. at 217. Consent cannot be inferred merely by the fact that the employee obeyed the commands of the general employer in entering the services of the borrowing employer. *See Bauernfeind v. Zell*, 190 Wis. 2d 701, 715, 528 N.W.2d 1 (1995) (citing *Rhinelander*, 206 Wis. at 218). "While the employee may

¶ 34. We conclude, as did the court of appeals, that the existence of an arrangement or understanding between a general employer and a borrowing employer is relevant to the issue of an employee's consent to enter into a new employment relationship with the borrowing employer.

¶ 35. In the case at bar the two employers did not have a prior arrangement or understanding to loan Szydel or any other employee to Major Industries to load the trailer. Szydel's job as truck driver did not require him to help load the trailer. He was not compensated by either employer for helping to load the trailer. Szydel was paid only for delivery of the load to the intended destination.

¶ 36. Furthermore, Szydel's help in the loading process was not needed. It was standard practice for Major Industries to use four employees to load a trailer, and in this case Major Industries had four employees on site to load the trailer. Szydel's only obligation with respect to the load was to secure and deliver it to the intended destination.

¶ 37. It is one thing for Szydel to have assisted the employees of Major Industries with loading the trailer and an entirely different matter for Szydel to have consented to enter into an employment relationship with Major Industries. The record does not support an inference that Szydel consented to employment with Major Industries for purposes of loading the trailer. Szydel's cooperation with the employees of

---

be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order." *Rhinelander*, 206 Wis. at 217. *See also Springfield*, 10 Wis. 2d at 412; Restatement (Second) of Agency § 227 cmt. d, at 503 (1958).

Major Industries in the loading process was not sufficient to rebut the presumption that Szydel remained in the employ of Corwyn Transport.

¶ 38. We agree with the court of appeals that the factual dispute about Szydel's role in the loading process does not present a genuine issue of material fact for purposes of this summary judgment and is insufficient to support Corwyn Transport's loaned employee defense. We conclude as a matter of law that Szydel did not consent to establish employment with Major Industries immediately before the fatal accident.

¶ 39. Because we conclude that Szydel did not consent to enter a new employment relationship, we need not, and do not, address the other elements or vital questions of the *Seaman* test.

¶ 40. In conclusion, we hold that Szydel was not a loaned employee of Major Industries at the time and place of the accident resulting in Jason Borneman's death. For the foregoing reasons we affirm the decision of the court of appeals, which remanded the cause to the circuit court for trial on the issue of Szydel's negligence.

*By the Court.*—The decision of the court of appeals is affirmed.