Rita POWELL, Plaintiff-Appellant,

v.

MILWAUKEE AREA TECHNICAL COLLEGE DISTRICT BOARD,
Wisconsin Electric Power Company and Joe Zauner,
Defendants-Respondents,

ABC INSURANCE CO., XYZ Insurance Company and
Primecare Health Plan, Inc., Defendants.

Court of Appeals

*No. 97–3040. Oral argument January 20, 1999.—Decided
March 23, 1999.*

(Also reported in 594 N.W.2d 403.)

795

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Dale R. Nikolay* of *Law Offices of Dale R. Nikolay, S.C.*, of Milwaukee, with oral argument by Dale R. Nikolay.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert P. Ochowicz* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee, with oral argument by *Robert P. Ochowicz*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J.    Rita Powell appeals from two orders in this negligence case alleging a violation of the Safe Place Statute. One order, granting partial summary judgment to the respondents, concluded that Milwaukee Area Technical College (MATC) had immunity from suit pursuant to § 893.80(4), STATS. The other order, granting summary judgment to the respondents, dismissed all the remaining causes of action.

Originally Powell sued Joe Zauner, her instructor, MATC, and Wisconsin Electric Power Company (WEPCO) after she fell from a utility pole during a line mechanic class offered by MATC held in a yard outside a building owned by WEPCO and partially leased to MATC.[1] She asserts that the trial court erred in concluding that: (1) this was an appropriate case for summary judgment; (2) Zauner was MATC's loaned employee, thereby qualifying him for immunity from suit pursuant to § 893.80(4), STATS.; and (3) WEPCO, although the owner and lessor of the property, could not be liable under the safe place statute because the pole was a temporary condition maintained and controlled by MATC. We conclude that the matter was ripe

---

[1] The summary judgment motion was bifurcated requiring two separate orders. Originally, Powell also appealed the grant of summary judgment to MATC. At oral argument, her counsel conceded that case law construing § 893.80, STATS., exempts MATC from the requirements of the safe place statute. All other dismissed claims of Powell have not been appealed.

for summary judgment as there were no disputed issues of material fact. We affirm the trial court's ruling, concluding that, after applying the legal tests to the undisputed facts, Zauner was a loaned employee of MATC engaged in a discretionary act which qualified him for immunity pursuant to § 893.80(4), and WEPCO, as the owner and lessor of the property where the class was conducted, had no safe place statute liability because it had no control over the utility pole or its maintenance.

## I. BACKGROUND.

Powell was injured when she slipped and fell approximately six feet from a utility pole during a line mechanic training class offered by MATC. The pole from which she fell was donated by WEPCO and installed by the students in the line mechanic class taken by Powell. The fall occurred outside a building leased to MATC by WEPCO for $10.00 per year. Under the lease agreement, MATC was entitled to use a portion of the building and a garage owned by WEPCO as long as the leased premises were used as a training facility. The lease also required WEPCO to be responsible for janitorial services and maintain and repair the property including the common areas. The instructors for the line mechanic class were Wayne Lohr and Joe Zauner. The instructors were hired by MATC to teach the class but remained paid WEPCO employees.

Powell sued Zauner, MATC, and WEPCO to recover damages for her injuries caused by the fall. She claimed that the parties were negligent under the safe place statue for failing to maintain a safe place of employment. The respondents brought a summary judgment motion in which they asserted that Zauner was a loaned employee of WEPCO and, as such, his

negligent acts were the responsibility of MATC, not WEPCO. The respondents further argued that since Zauner was engaged in a discretionary act at the time of the accident, both MATC and Zauner were immune from liability pursuant to § 893.80(4), STATS.[2] The respondents also posited that WEPCO could not be held legally responsible, under § 101.11(1), STATS.,[3]

---

[2] Section 893.80(4), STATS., provides:

**Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.**

. . . .

(4) No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

[3] Section 101.11(1), STATS., provides:

**Employer's duty to furnish safe employment and place. (1)** Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

(2) (a) No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no such employer shall fail or neg-

although it owned the property and leased it to MATC, because the site of the accident was not a place of employment as defined in § 101.01(11). Additionally, WEPCO argued that, as the owner of a public building, it had no liability for maintenance of the pole because the utility pole did not qualify as a structural defect or unsafe condition.

The trial court adopted the respondents' reasoning, finding that Zauner was a loaned employee, and thus, that he and MATC were immune from suit because the alleged negligent acts were discretionary acts immunized by § 893.80(4), STATS. With respect to WEPCO, the trial court found as a matter of law that WEPCO was not responsible because the poles did not represent a structural defect and, additionally, the maintenance of the poles was the sole responsibility of Zauner and MATC. Accordingly, the trial court found WEPCO had no liability.

---

lect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes and frequenters; and no employer or owner, or other person shall hereafter construct or occupy or maintain any place of employment, or public building, that is not safe, nor prepare plans which shall fail to provide for making the same safe.

    (b)  No employe shall remove, displace, damage, destroy or carry off any safety device or safeguard furnished and provided for use in any employment or place of employment, nor interfere in any way with the use thereof by any other person, nor shall any such employe interfere with the use of any method or process adopted for the protection of any employe in such employment or place of employment or frequenter of such place of employment, nor fail or neglect to do every other thing reasonably necessary to protect the life, health, safety or welfare of such employes or frequenters.

## II. Analysis.

This case arises from a grant of summary judgment. The standard for reviewing summary judgment has been often repeated and we need not repeat it here. *See Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 280, 493 N.W.2d 734, 736 (Ct. App. 1992). We are obligated to apply the same standard as the trial court. *See id.* Our review is *de novo. See id.* Consequently, we will affirm the summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

This matter was appropriate for summary judgment.

Powell argues that the record is such that it renders summary judgment inappropriate. She claims that "the determination that the instructors of the line mechanic training program were borrowed servants[4] of MATC was an erroneous application of law to disputed facts." A careful look at Powell's reasons for claiming that there are material disputes of fact reveals, however, that it is not the facts which she disputes, but the legal conclusions arrived at when applying the loaned

---

[4] The term "borrowed servant" is often used in other jurisdictions and is used interchangeably with "loaned employee." Wisconsin generally uses the term "loaned employee." *See Borneman v. Corwyn Transport Ltd.*, 219 Wis. 2d 346, 580 N.W.2d 258 (1998); *see also, e.g., Rider v. Pool Offshore Co.*, 987 F. Supp. 943 (E.D. La. 1997); *Coleman v. Mini-Mac Maintenance Serv.*, 706 So. 2d 393 (Fla. Dist. Ct. App. 1998); *Lewis v. Georgia-Pacific Corp.*, 496 S.E.2d 280 (Ga. Ct. App. 1998).

employee test. Powell argues that a dispute exists because evidence in the record established that Zauner was a WEPCO employee, while the respondents argued in their brief in support of their summary judgment motion that he was an employee of MATC. These propositions, however, are not conflicting as both statements were true. Zauner was a paid WEPCO employee who was on loan to MATC to teach. Consequently, he was also an employee of MATC. We conclude there were no disputed material facts and this matter was ripe for summary judgment. *See id.*

### Zauner was a loaned employee of WEPCO.

As noted, Zauner was an employee of WEPCO when he agreed to teach a line mechanic course for MATC. WEPCO claims that Zauner became a loaned employee when he taught the course. We agree.

While ordinarily an employer is responsible for the negligent acts of an employee, if an employee falls into the category of a loaned employee, the borrowing employer (special employer) can be totally responsible for the negligent acts of the loaned employee under certain circumstances. As the respondents accurately state, "The test for determining whether an employee retained his employment with his loaning employer (the general employer) or became the employee of the borrowing employer (the special employer) was first set forth in *Seaman Body Corp. v. Industrial Comm'n*, 204 Wis. 157, 235 N.W. 433 (1931), and was subsequently applied in *Bauernfeind v. Zell*, 190 Wis. 2d 701, 714–15, 528 N.W.2d 1, 6 (1995)."[5]

---

[5] The *Seaman* test has been criticized by the supreme court as being difficult to apply because it is so fact oriented. *See, e.g., Borneman v. Corwyn Transp., Ltd.*, 219 Wis. 2d 346, 354–55,

The *Seaman* test was most recently examined by the supreme court in *Borneman v. Corwyn Transport, Ltd.*, 219 Wis. 2d 346, 580 N.W.2d 253 (1998). The *Borneman* court discussed two aspects of the *Seaman* test. First, three elements exist which underlie the analysis.

> The relation of employer and employee exists as between a special employer to whom an employee is loaned whenever the following facts concur: (a) Consent on the part of the employee to work for a special employer; (b) Actual entry by the employee upon the

---

580 N.W.2d 253, 257 (1998); *Bauernfeind*, 190 Wis. 2d at 710, 528 N.W.2d at 4. Other cases subsequent to *Seaman* found the *Seaman* test "unsatisfactory because its requirements were too manipulable." *Gausch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 751, 463 N.W.2d 682, 685 (1990). In 1981, the Wisconsin legislature enacted §§ 102.29(6) & 102.01(2)(f), STATS., which apply to temporary help agencies. "These statutes were intended to simplify the determination of whether an employee who was injured in the workplace may maintain a tort action against a temporary employer." *Id.* These legislative enactments were a response to the inadequacies of the *Seaman* test. *See id.*; *see also Kaelber Plumbing & Heating v. LIRC*, 160 Wis. 2d 342, 350–51, 465 N.W.2d 829, 832–33 (Ct. App. 1991). The *Bauernfeind* court, however, has clarified that "the legislature intended sec. 102.29 (6), Stats., to replace the *Seaman* test only with respect to employees of a temporary help agency." *Bauernfeind*, 190 Wis. 2d at 712, 528 N.W.2d at 5.

The current case is not characterized as a "temporary help agency" case because the party seeking relief, Powell, was not an employee injured in the workplace who is seeking relief from a temporary employer. Further, the supreme court still utilizes the *Seaman* test and has declined to revise it. *See Borneman*, 219 Wis. 2d at 355, 580 N.W.2d at 257 (1998). We thus apply the test originally enunciated in *Seaman*.

work of and for the special employer pursuant to an express or implied contract to do so; (c) Power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

*Id.* at 353, 580 N.W.2d at 256.

These three elements and the following four questions are closely related, but "most cases interpreting and applying the *Seaman* test have emphasized the four vital questions rather than the three elements." *Id.* at 354, 580 N.W.2d at 256. Thus, our analysis will center on the second aspect of the *Seaman* test:

(1) Did the employee actually or impliedly consent to work for a special employer?[;] (2) Whose was the work he was performing at the time of injury?[;] (3) Whose was the right to control the details of the work being performed?[; and] (4) For whose benefit primarily was the work being done?

*Borneman*, 219 Wis. 2d at 354, 580 N.W.2d at 256.

At the summary judgment motion hearing, Powell conceded that the first three questions of the *Seaman* test could be answered affirmatively. In her appellate briefs, however, Powell claimed only two of the questions could be answered "yes." She now contends that the special employer did not have the right to control the details of the work performed, and she continues to argue, as she did at the summary judgment motion, that the primary beneficiary of Zauner's work was WEPCO. We are satisfied, however, that under this test, Zauner was a loaned employee.

The record clearly supports a conclusion that Zauner agreed to work for MATC; that he was performing MATC's work by teaching at the time of the injury; that MATC had the right to control the details of

804

Zauner's work; and that Zauner's work was primarily for the benefit of MATC. The undisputed evidence supporting these conclusions consists of Zauner's affidavit wherein he states that, although paid by WEPCO, he became an employee of MATC, as he was asked by MATC to teach and he agreed to do so. His affidavit also confirms that he reported to no one at WEPCO regarding his teaching duties. Zauner's affidavit also supports the fact he was working for MATC at the time of the accident because he states that he agreed to teach for MATC; that only MATC could fire him; and that no one at WEPCO supervised or monitored his employment as an instructor. Further evidence of Zauner's status as a MATC instructor comes from an affidavit of the Associate Dean of MATC, who related that, in his capacity as Associate Dean, he was in charge of the line mechanic program when the accident occurred; that the program was part of MATC's curriculum; and that the two instructors were under his supervision.

Powell argues that "the only involvement on behalf of MATC in the day-to-day operation of the class was to conduct periodic evaluations," and "[WEPCO] and its employees were directly responsible for administering the course and providing the materials required." The record references following these contentions do not, however, support her arguments. Rather, the undisputed facts confirm that MATC controlled the details of Zauner's work. A WEPCO attorney's affidavit submitted in support of its summary judgment motion established that after the WEPCO donations to the line mechanic program, WEPCO had no further role in the program. At oral argument, these facts were not disputed by Powell's attorney. Various other affidavits related that MATC alone selected the students and

805

decided class content, testing, grades and the like. Moreover, the students in the program had no affiliation with WEPCO; they were students of MATC, and they were free to take their newly earned skill in line mechanics and work for any employer they wished. Information supplied at oral argument also established that WEPCO was one of several entities involved in the line mechanic program's inception, and that the purpose of this program was to enlarge the pool of minorities and women with line mechanic skills, not to supply WEPCO with a pool of eligible employees. Again, these assertions were not disputed by Powell's attorney. Thus, the first three questions under *Seaman* mandate an affirmative answer.

The record also supports a finding that MATC was the primary beneficiary of the program. Powell argues that because WEPCO invested in the program by leasing the building and supplying the instructors and the equipment, Zauner's teaching must have been primarily for the benefit of WEPCO and not MATC. These facts, however, are not dispositive.

"Benefit" is defined in BLACK'S LAW DICTIONARY as "advantage; profit; fruit; privilege; gain; interest." BLACK'S LAW DICTIONARY 158 (6th ed.). Applying this definition, MATC received the primary benefit of Zauner's teaching. MATC is an educational institution and its purpose is teaching. Thus, the benefit of offering a course and educating students furthers MATC's presumed purpose. Consequently, Zauner's instruction benefited MATC. Although it can be argued that WEPCO also "profited" or "gained" through Zauner's teaching, any benefit WEPCO stood to receive was an indirect benefit. While the graduates of the line mechanic program could decide to work for WEPCO, they were not obligated to, and at oral argument, the

806

parties agreed that only one of the fifteen students in Powell's class became a WEPCO employee. Further, the line mechanic program was not a substitute for WEPCO training. Again the parties agreed at oral argument that any new graduate of the line mechanic program was not exempt from mandatory WEPCO training required of all new employees. Consequently, we conclude that whatever indirect benefit WEPCO derived from Zauner's teaching was secondary to MATC's immediate direct benefit. Thus, all the questions in the *Seaman* test can be answered affirmatively, making Zauner a loaned employee.

■

Thus, Zauner was a loaned employee and MATC, not WEPCO, was liable for his alleged negligence. Inasmuch as Powell concedes that MATC is immune from suit, any negligence attributable to Zauner for which MATC would be liable falls within the protection of the immunity statute because Zauner was engaged in a discretionary act when the accident occurred.[6]

Did WEPCO, as the owner of the premises where Powell was injured, violate the safe place statute?

Powell sued the respondents on a theory that Zauner, MATC and WEPCO all fell within the safe place statute, which supplants the duty of ordinary care found in common law with a higher duty. Powell argues that the trial court erred in relieving WEPCO of

[6] Prior to oral argument, we instructed counsel to address the "possible application of the 'dual persona' doctrine as discussed in *Riccitelli v. Broekhuizen*, 221 Wis. 2d 533, 585 N.W.2d 709 (Ct. App. 1998)." Upon review of the record we are satisfied that the dual persona role is inapplicable under our facts as the dual persona doctrine requires that the employers share significant overlapping tasks.

any safe place statute liability because, she contends, the leased portion of the premises was a WEPCO place of employment as WEPCO, under the lease provisions, did not relinquish complete control of the premises, reserving for itself the task of "maintenance responsibilities of the premises, building and lands," including providing janitorial services, and also reserving for itself the right to "enter . . . inspect, maintain, repair, alter and improve the premises." Powell posits that these reservations in the lease transformed the MATC leased portions of the building into a WEPCO place of employment, as WEPCO employees would be required to enter the building in order to fulfill WEPCO's obligations under the lease to maintain or repair the building.

WEPCO counters that it has no liability under the safe place statute because WEPCO's involvement in the leased portion of the building did not render the building a place of employment as defined in § 101.01(11). WEPCO argues that in order to qualify as a place of employment there must have been an industry, trade or business carried on at the site of the pole, and that this industry, trade or business must have been engaged in an activity for "direct or indirect gain or profit." WEPCO asserts that neither condition was met under the undisputed facts. WEPCO also now argues that its only possible safe place statute liability was derived from its ownership of a public building.[7] Further, WEPCO argues that, under the facts here, it could not be liable because the safe place statute limits the liability of owners of public buildings to responsibility for structural or physical defects. Since the utility

---

[7] Originally WEPCO took the position that the site was not a public building. Powell also claimed that the site was not a public building.

808

pole qualified as neither a structural nor physical defect, WEPCO maintained that summary judgment was appropriate.

We conclude that WEPCO was an owner of a public building under the safe place statute. We question whether MATC's leased portion qualified as a WEPCO place of employment. However, we decline to decide this issue because, under either theory of liability, the pole would not subject WEPCO to the enhanced standard of care found in the safe place statute.

In concluding that WEPCO fell within the safe place statute as the owner of a public building, we note the following facts: (1) the pole was not a structural or physical defect of the building; and (2) the pole was a temporary condition. Thus, even if WEPCO had safe place statute liability as the owner of a place of employment, WEPCO did not have any liability because WEPCO did not exert the requisite control over the pole to incur liability.

We first consider the definition of an owner of a public building. A "public building" under § 101.01(12), STATS., is defined as:

> [A]ny structure, including exterior parts of such building, such as a porch, exterior platform or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants.

■

We can easily conclude that WEPCO was liable as the owner of a public building. When WEPCO leased a portion of the premises to MATC, MATC used the premises as a teaching facility, and the building became a public building. Safe place liability applies to

a school because a school is a "public building" under the safe place statute. *See Mlynarski v. St. Rita's Congregation*, 31 Wis. 2d 54, 57, 142 N.W.2d 207, 209 (1966).

■

The obligation under the safe place statute of an owner of a public building who leases the building to another is limited to structural or physical defects. *See Naaj v. Aetna Ins. Co.*, 218 Wis. 2d 121, 126, 579 N.W.2d 815, 818 (Ct. App. 1998).

> We consider that where the legal right to enter, examine, alter, and repair demised premises has been retained by the owner of a public building, that right cannot be wholly divorced from the statutory duty which the owner owes to frequenters to maintain a safe place. As we have had frequent occasion to point out, that obligation is limited to furnishing a building free from structural defects.

*Sheehan v. 535 North Water St.*, 268 Wis. 325, 331–32, 67 N.W.2d 273, 277 (1954).

Given the narrow duties of an owner of a public building and, extrapolating from case law, we surmise that the utility pole did not qualify as a structure as that word is used in the statute.

> [In] *Lawver v. Joint District*, 232 Wis. 608, 612 (1939) . . . the court reasoned thus: ". . . We cannot hold that the flagpole is a 'public building' within the safe-place statute. True, the flagpole is a 'structure' within the meaning of sec. 101.01(12), Stats., but the structure there referred to must be used as a place of resort, assemblage, lodging, trade, traffic, occupancy or use by the public, or by three or more tenants."

HOWARD H. BOYLE, JR., WISCONSIN SAFE-PLACE LAW REVISED 79 n.50 (1980).

Additionally, unlike the flagpole in *Lawver*, which was intended to be a permanent fixture, the undisputed facts reveal that here, the utility pole was even less likely to qualify under the statute because it was not permanent in nature and had been erected temporarily to be used in class instruction and then removed. Thus, despite being the owner of a public building, WEPCO is absolved of any safe place statute liability stemming from the pole as it was not a structure under § 101.01(12), STATS.

We next consider the definition of "place of employment," found in § 101.01(11), STATS. The statute reads:

> [A] place of employment includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit.

Under § 101.01(11)(i), if the leased portion of the building was a WEPCO place of employment, WEPCO would be under a duty to "furnish a place of employment which shall be safe for the employees therein and for frequenters thereof." Section 101.11(1), STATS. This duty is broader than that of an owner of a public building and includes liability "for structural defects; for unsafe conditions associated with the structure; and for unsafe conditions unassociated with the structure." BOYLE, WISCONSIN SAFE-PLACE LAW REVISED at 118 (footnotes omitted).

811

The submitted evidence does not permit a determination as to whether WEPCO's ownership of the leased portion constituted a place of employment for WEPCO employees.[8] Nevertheless, we will assume it is a WEPCO place of employment for purposes of our analysis.

We have also assumed that the leased portion of the building where the accident occurred was not a place of employment for MATC. Powell was a student, not an employee of, MATC. *See Niedfelt v. Joint School Dist. No. 1*, 23 Wis. 2d 641, 648, 127 N.W.2d 800, 803–04 (1964) (student receiving instruction in public school is not "employee" within safe place statute); *Kirchoff v. City of Janesville*, 255 Wis. 202, 206–07, 38 N.W.2d 698, 700 (1949) (vocational school maintained by city to enable persons attending to increase their ability and efficiency as workmen was not "place of employment" within safe place statute).

Nevertheless, our examination of the undisputed facts leads us to conclude that even if MATC's leased building is a WEPCO place of employment, the pole falls outside the safe place statute's standard of care because WEPCO had no control over the site. First, we note that while the safe place statute standard of care for places of employment is broad, it does not extend to non-structural areas and temporary conditions which are not under the control of the owner. "[I]n the case of owners[,] generally, lack of control as to such [tempo-

---

[8] Evidence suggests that WEPCO's lease's reservations of rights clauses may have inadvertently created a "place of employment," but we have insufficient facts to decide whether the profit motive found in the definition of "a place of employment" was present. Further complicating matters is the fact we were presented with scanty information concerning the use of the unleased portion of WEPCO's building.

rary] conditions relieves [them] from liability." BOYLE, WISCONSIN SAFE-PLACE LAW REVISED at 120.

We also find persuasive the civil jury instructions concerning safe place law liability and case law construing the limits of safe place law liability. WISCONSIN J I—Civil 1911 reads: "Before a person has a duty to furnish a safe place of employment the person must have the right to present control over the place so that the person can perform the duty to furnish a safe place of employment." This requirement was first promulgated in *Freimann v. Cumming*, 185 Wis. 88, 91, 200 N.W. 662, 663 (1924):

> We now hold that, in order to place such a liability as is here claimed against one as the 'owner' of such premises, there must exist, in such person the right to . . . present control . . . thereover so that such person may lawfully exercise the rights necessary to permit him to properly enter upon the premises in order to perform such an ever present duty as is fixed by this statute.

The evidence unequivocally shows that MATC assumed the exclusive duty of maintaining the poles. Wayne Lohr, one of the two WEPCO employees teaching the line mechanic course for MATC, stated in his uncontroverted affidavit that "The poles were inspected every day by myself and Mr. Zauner . . . ." as employees of MATC, and that WEPCO "did not do any maintenance or inspection . . . on the poles." Zauner's affidavit confirmed Lohr's statements that WEPCO was not responsible for maintaining the poles. As noted, evidence was submitted that the poles were temporary conditions created by MATC during the class as the students dug the holes and erected the donated poles. Thus, because the pole was not a structural

813

defect but was a temporary condition and because under the undisputed facts MATC or its agents undertook the responsibility to erect the poles and maintain them, WEPCO had no responsibility under the safe place statute for the poles.

In sum, we determine that the trial court's decision to grant summary judgments to the respondents was appropriate as there were no disputed material facts and the trial court's decision must be affirmed. Zauner, a WEPCO employee, was loaned to MATC and, under operation of law, MATC was totally responsible for Zauner's negligence. Zauner and MATC were immune from suit pursuant to § 893.80, STATS. Further, WEPCO, as the owner and lessor of the accident site, had no duty under the safe place statute to maintain the pole as it was a temporary condition, for which MATC had exclusive control and maintenance responsibility.

*By the Court.*—Orders affirmed.